**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FERNANDA ARAGON, | |
| Plaintiff, | |
| v. | **COMPLAINT AND JURY DEMAND** |
| LOYOLA UNIVERSITY CHICAGO | |
| Defendant. | |

**NATURE OF THE CLAIM**

1. Plaintiff Fernanda Aragon ("Fernanda" or "Plaintiff") brings this action against Loyola University ("Loyola" or the "University") under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX"); the Illinois Preventing Sexual Violence in Higher Education Act, 110 ILCS 155/20; and common-law negligence theories and other related claims.

2. Loyola has systemically mishandled and underreported student complaints of sexual misconduct, contrary to federal and state regulations in addition to its own internal policies and procedures, dating back to at least 2011.

3. Despite knowledge sexual assault is endemic and Loyola's students are routinely injured, the University has failed, and continues to fail, to take effective preventive measures and has allowed this dangerous situation to persist and cause harm to students, including Plaintiff, creating a campus culture of deliberate indifference and tacit acceptance of sexual misconduct.

4. As a result, Plaintiff was forced to finish her undergraduate studies in a hostile environment or abandon her education at Loyola.

5. This is a related case to Kane et al v. Loyola University of Chicago (1:22-cv-06476) pending in the Northern District of Illinois, Eastern Division, before Hon. Mary M. Rowland.

## PARTIES

6.      Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth.

7.      Fernanda is a current Loyola undergraduate student; she began her studies at Loyola in August 2019. Fernanda is a citizen and resident of the State of Illinois.

8.      Defendant Loyola University Chicago is a private educational institution with its primary campus in Chicago, Illinois.

9.      Loyola receives federal funding in many forms, including federal student aid, and as such is subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"). Loyola is contractually obligated to enforce Title IX in its programs and all University activities.

## JURISDICTION AND VENUE

10.      Jurisdiction lies under 28 U.S.C. §1331 and § 1343(a)(4) in as much as this Complaint presents a federal question.

11.      Plaintiff brings this action in part pursuant to Title IX of the Education Amendments of 1972 (20 U.S.C. §1681), which is an act of Congress providing for protection of civil rights.

12.      Venue in the Northern District of Illinois is appropriate because the occurrences complained of took place in Cook County, Illinois. 28 U.S.C. §1391(2). It is also appropriate because Plaintiff and Defendant reside within the Northern District of Illinois. 28 U.S.C. §1391(1).

## BACKGROUND FACTS RELEVANT TO ALL COUNTS

### Title IX (20 U.S.C. § 1681 et seq. (2006))

13.      Title IX of the Education Amendments Act of 1972 promotes equal opportunity by providing that no person may be subjected to discrimination on the basis of sex under any educational program or activity receiving federal financial assistance.

14.     The discrimination prohibited by Title IX includes inequitable treatment of survivors of sexual assault and sexual harassment.

15.     Accordingly, universities receiving federal funds are required to respond promptly and effectively to sexual harassment, including sexual violence, that creates a hostile environment.

### Clery Act (20 U.S.C.A. § 1092(f))

16.     After college freshman Jeanne Clery was raped and murdered in her own campus residence, Congress enacted the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (the "Clery Act") in 1990.

17.     The Clery Act is designed to provide transparency, ongoing communication, and to promote campus safety by ensuring students, employees, parents, and the broader community are well-informed about important public safety and crime prevention matters.

18.     Pursuant to the Clery Act, institutions that receive federal funds must disclose accurate and complete crime statistics for incidents that are reported to campus security and local law enforcement as having occurred within the school's so-called "Clery Geography," which includes three general categories:[1]

- <u>On campus</u>: Any building or property that an institution owns or controls within a reasonably contiguous area that directly supports or relates to the institution's educational purposes, including residence halls.

- <u>Non-campus building or property:</u> Any building or property that is owned or controlled by a recognized student organization—including school-recognized fraternity or sorority houses and events for school clubs that occur off campus.

- <u>Public property</u>: All public property within the reasonably contiguous geographic area of the institution that is adjacent to or accessible from a facility the institution owns or controls and that is used for educational purposes.

---

[1] *See* The Handbook for Campus Safety and Security Reporting (2016 Edition), Department of Education (last accessed September 13, 2022), https://www2.ed.gov/admins/lead/safety/handbook.pdf.

19.     The goal of the notification requirement is to protect members of the constituent campus communities by "aid[ing] in the prevention of similar occurrences."[2]

20.     Congress recognized that contemporary campus communities had become increasingly dangerous places.

21.     Furthermore, Congress noted that, in roughly eighty percent of crimes on campus, both the perpetrator and the victim were students.[3]

22.     Even when sexual violence occurs off campus and not in the context of an educational program or activity, a university must process such complaints and consider the effects of the sexual violence when evaluating whether there is a hostile environment on campus or in an off-campus education program or activity.

### *Illinois Preventing Sexual Violence in Higher Education Act (110 ILCS 155/1–99)*

23.     In 2015, the Illinois Legislature enacted the Illinois Preventing Sexual Violence in Higher Education Act, which, among other requirements, mandates higher education institutions:

- Develop a clear, comprehensive campus sexual violence policy, including detailed incident reporting options and university response guidelines;

- notify student survivors about their rights, including their right to confidentiality, and the protections the university can provide to ensure the student's health and safety, such as obtaining an order of protection, changing class schedules or campus housing, and the availability of medical and counseling services;

- provide a confidential advisor to survivors to help them understand their options and rights, including the options to report the sexual assault and to seek medical and legal assistance;

- have a comprehensive policy to address student allegations of sexual violence, domestic violence, dating violence, and stalking, consistent with federal and state law; and

---

[2] *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 30 (1st Cir. 2007) (quoting 20 U.S.C. § 1092(f)(3)).

[3] *See* Crime Awareness and Campus Security Act of 1990, Pub.L. No. 101–542, § 202, 104 Stat. 2381, 2384 (codified as amended at 20 U.S.C. § 1092(f)).

- respond to a report submitted electronically within 12 hours.[4]

24.     Pursuant to the Act, Loyola is required to publish an annual report, which includes Loyola's Comprehensive Policy and Procedures for Addressing Discrimination, Sexual Misconduct, and Retaliation ("Comprehensive Policy"), as well as data and information concerning trainings, prevention programs, reported incidents within Loyola's "Clery Geography," and the outcomes/resolution of formal complaints.

### Loyola's Internal Policies & Procedures ("Comprehensive Policy")

25.     In addition to the federal and state regulations described above, Loyola has its own internal policies and procedures once a student reports sexual misconduct, as detailed in the University's Comprehensive Policy and Procedures for Addressing Discrimination, Sexual Misconduct, and Retaliation ("Comprehensive Policy").[5]

26.     According to Loyola's Office for Equity & Compliance, Loyola's internal policies and procedures "meet[] or exceed[] the requirements of federal and state civil rights laws and regulations to provide for a prompt, fair, and equitable administrative process."

27.     In relevant part, the University's Comprehensive Policy provides:

- A preponderance of the evidence standard is used to determine whether a respondent is responsible for violating the Comprehensive Policy. This standard requires that the totality of the evidence, considered impartially, must indicate that it is more likely than not that the Comprehensive Policy was violated.

- Complainants *may* be accompanied by one advisor of their choice, provided that the selection of the advisor does not cause an undue delay of the Grievance Process, but the University will not delay meetings or proceedings to accommodate an advisor's availability.

---

[4] *See* Loyola University Chicago, Office for Equity & Compliance, "Illinois Preventing Sexual Violence in Higher Education" (last accessed September 11, 2022), https://www.luc.edu/equity/titleixequitylaws/illinoispreventingsexualviolenceinhighereducationact/.

[5] *See* Loyola University of Chicago Comprehensive Policy and Procedures for Addressing Discrimination, Sexual Misconduct, and Retaliation, (last accessed April 29, 2022), https://www.luc.edu/media/lucedu/equity/pdfs/comprehensivepolicy/LUC%20Comprehensive%20Policy_2022-2023.pdf.

- Complainants *may* request assistance from Loyola in identifying an available advisor, but the University does "not ensure or guarantee the quality or availability of any University-provided advisor."

- An advisor may be any person of the party's choosing, including an attorney; when an advisor is also an attorney, this must be disclosed to the University, and the advisor is limited to a "supportive" and "non-representative role." An attorney of the University's choosing may also attend any proceeding whenever an attorney serving as an advisor is present.

- Upon receiving a report of sexual misconduct, the University may implement a no contact directive; in all cases in which a no contact directive is implemented, the relevant parties will be promptly informed in writing of the conditions, duration, and applicable parameters of the directive.

- The University aims to complete all investigations into students' report of sexual misconduct within six months of receipt of the initial complaint.

- If an alleged violation of sexual misconduct is substantiated, the violating party may be subject to a range of outcomes—including suspension, expulsion, and the University withholding or revoking the assailant's transcript or degree.

28.     At the beginning of each academic year, a copy of Loyola's Comprehensive Policy is published and shared with University students, employees, parents, and the broader community. The above excerpts are from Loyola's Updated and Published 8/24/2022 Comprehensive Policy, but, upon information and belief, the University's Comprehensive Policy has remained materially the same since 2011.

### Fernanda Aragon

29.     Fernanda enrolled as undergraduate student at Loyola in August 2019.

30.     On August 22, 2019, Fernanda was sexually assaulted while incapacitated by another Loyola undergraduate student in his University dormitory room.

31.     Fernanda woke up naked in her assailant's room in a state of panic and confusion; she immediately got dressed and left his dormitory room as quickly as possible.

32.     Prior to leaving, Fernanda asked her assailant if he had ejaculated inside of her, to which he responded, "I don't know."

33.     The next day, however, Fernanda's assailant purchased Plan B (the "morning after pill"), which he delivered to Fernanda's dormitory room and instructed her to take.

34.     For many months, Fernanda tried not to think about what happened to her because as a college freshman, she "did not want to deal with it" at the time.

35.     But months later, Fernanda found herself grappling with depression, anxiety, and an overwhelming, misplaced sense of shame and guilt.

36.     As such, Fernanda enrolled herself in therapy at Loyola, which offers students a maximum of seven sessions.

37.     As her therapy progressed, Fernanda was able to begin processing her sexual assault and the toll it had taken thereafter on her physical, mental, and emotional well-being.

38.     Given the strides Fernanda was making in therapy, she was distraught when the University informed Fernanda her seventh therapy session would be her final meeting with her assigned Loyola therapist.

39.     When Fernanda asked if she could continue to see her therapist and compensate Loyola out-of-pocket, she was informed by the University that even paying out-of-pocket was not an option; losing Fernanda's only pillar of support at the University only compounded her stress, anxiety, depression, and feelings of guilt/shame. Fernanda was forced to expend considerable time and resources to find a new therapist, unaffiliated with the University.

40.     When Fernanda was sexually assaulted, she did not know of the University's policy of deliberate indifference to reports of sexual misconduct that created a heightened risk of sexual violence and sexual harassment.[6]

41.     On March 21, 2021, at 3:06 a.m. CST, Fernanda submitted an official report detailing her sexual assault to Loyola's Office of Equity & Compliance.

42.     On March 15, 2021, at 10:42 a.m. CST, Fernanda received an official correspondence back from Loyola stating "a letter has been issued to you electronically by [the Office of Dean of Students]."

43.     Thereafter, Fernanda had a meeting with Samantha Maher Sheahan, Associate Dean of Students, during which Fernanda indicated she wanted to file a "formal" Title IX grievance.

44.     On March 29, 2021, Fernanda received an official correspondence from Tim Love, "Executive Director & Title IX Coordinator."

45.     Throughout the Title IX investigation and formal complaint resolution, Fernanda's assailant was represented by experienced criminal defense attorney Purav Bhatt, of The Law Office of Purav Bhatt.

46.     But Loyola did not inform Fernanda her assailant was represented by an attorney. When Fernanda inquired about an advocate, the University assigned Fernanda a non-attorney Loyola employee with a background in higher education, who worked in the Wellness Center.

47.     Fernanda provided a number of witnesses, documented messages, and a photograph of the Plan B pill that Fernanda's assailant had purchased for her the day after she was raped.

---

[6] *See Karasek v. Regents of Univ. of California*, 500 F. Supp. 3d 967, 981 (N.D. Cal. 2020) ("when [plaintiff] was assaulted, she did not know of the University's alleged policy of deliberate indifference to reports of sexual misconduct that created a heightened risk of sexual harassment. I join those courts that have held that a pre-assault claim under Title IX does not accrue until a plaintiff knows or has reason to know of such a policy of deliberate indifference").

48.     Despite Loyola stating this in its "Comprehensive Policy," and, in contrast to other survivors, Fernanda was required to send the questions her advocate would ask her assailant to Dean Love for approval prior to the final hearing which was held on September 10, 2021.

49.     Fernanda and her advocate submitted the following questions:

- What is your understanding of consent?
- You mentioned that the "other guys would have stopped you". Whose responsibility is it to get consent in a sexual encounter?
- Did you ask me if I was sober enough to consent?
- Are you aware of why some people do not come forward right away after an assault?
- I would not have taken Plan B if I knew you didn't ejaculate. Why did you tell me you ejaculated if you didn't?
- Why did you text the roommate "Is she okay, is she fine?" after I left?
- Why do you think I would have agreed to not using a condom when I've never expressed otherwise?
- Are you aware that rape is the most underreported crime? (source: RAINN)

50.     Fernanda recalls she was peppered with a number of very detailed questions by Attorney Purav Bhatt, which her advocate did not prepare Fernanda for, causing Fernanda to become very flustered and distressed.

51.     At the end of Fernanda's final Title IX hearing, Fernanda read the following closing statement:

To ▮▮▮

Before you raped me, my loved ones would describe me as a ray of sunshine, always looking to spread positive energy into everyone's heart in hope of bringing smiles onto the faces that surround me. After you raped me, I slowly started falling in a deep hole of depression and feelings of unworthiness - however for 17 months I could not comprehend the sudden hopelessness. I attended therapy, and to my surprise after unraveling my life story to my therapist, I learned that you did in fact, rape me and ultimatley stripped away the dignity I once held as a young woman. Regardless of becoming stronger through therapy and medication, there are days that the trauma brings me down once again into a profound hole of feelings of unworthiness, enough to send me into the psychiatric unit for the trauma that you inflicted upon me, that my psychiatrist and my loved ones fear could weaken me to the point of finding no other reason to keep going. But I am here to tell you that today and tomorrow, I now hold the reins and will never let you hold any power over me, and I have brought my story forward in hopes of saving someone from being hurt by you again. While you may not think that you did anything to hurt me, physically, mentally, or emotionally, because of you, I now fear having a daughter, because I am terrified that she'll encounter someone as malicious as you.

▮▮▮, with the most pure intentions, I truly hope and wish that you find the help that you need, whatever that entails.

To the hearing board:

I came to Loyola under a promise that I would not just be another number or another statistic in the midst of all students, but rather that I would be seen and respected for the person I am in this institution. In this moment, I ask for you to not see me as a number or a statistic, but rather as a student that has faced something so common yet so horrendous on this campus. Every day I carry the regret of letting myself get to the point of incapacitation and en-bloc blackout, as I tell myself that if maybe I hadn't had the drinks that I did that night, we would not be gathered here today. However, after various therapists, various psychiatrists and a high-risk psychiatric hospitalization due to my trauma from being raped, also known as delayed-onset PTSD, I have grown and accepted that this never was and never will be my fault, and I carry hope in my heart that you can see this too. While you don't know me on a personal level, I just ask of you to imagine me as a loved one, maybe a daughter, younger sister or even the little girl you once babysat back in high school, and think about what would be best for them if they were standing in my place right now. I will not ask for pity or empathy, and I hope the courage it took me to bring forth my rape will prevent it from happening to anyone else.

Thank you

10

52. On October 21, 2021, Fernanda learned the University had made a "no finding" against her assailant citing "insufficient evidence."

53. Fernanda was panic-stricken to learn her assailant would not be reprimanded and allowed to remain on campus; she lived with fear and anxiety, constantly wondering if she would be forced to cross paths with or attend a future class with him.

54. To make matters even worse, shortly thereafter, Fernanda learned Loyola had hired her assailant to work in the undergraduate library; a no-contact directive issued by the University remained in place between Fernanda and her assailant.

55. Dean Love made it very clear to Fernanda that either the complainant or respondent could violate the no-contact directive, as evidenced by the official correspondence Fernanda received from Loyola when she initiated her formal Title IX complaint process:

> Effective immediately, Respondent is to have **NO CONTACT**, whether direct or indirect, with Complainant. Similarly, to avoid any further conflict and to maintain equity, Complainant is to have **NO CONTACT** with Respondent. Note that *either* party may be found in violation of this directive.
>
> For the purposes of this directive, "contact" may include, but is not limited to:
>
> 1. Intentional in-person communication;
> 2. Telephone calls, text messages, or other direct messages;
> 3. Instant messages, emails, social media postings, or any other messages conveyed electronically; and/or
> 4. Any of the above contact facilitated through a third party
>
> Please note that efforts/attempts to communicate or completed communication will be treated the same. If you attempt to contact any of the named individuals above (or if they attempt to contact you), the initiator will be in direct violation of this directive and section 201(8) of the *Community Standards* ("Failure to comply"). While it is possible that you may see each other on or off campus at some point, you are expected to respect this directive in good faith at all times. Any evidence presented to the OEC that indicates that this directive may have been violated may result in increased and/or additional allegations being added to the current investigation, and may also subject the offender to additional interim restrictions and/or expedited disciplinary action.

56. When Fernanda inquired about her assailant working in the undergraduate library, where Fernanda had regularly studied previously, University administrators told Fernanda, "Nothing could

be done" about this; instead, administrators provided Fernanda a list of alternative study locations Fernanda could visit instead of the undergraduate library.

57.     In April 2021, Fernanda was sexually assaulted by another Loyola student on the University's campus; because reporting her first sexual assault had failed and revictimized Fernanda, she chose not to report the second assault.

58.     Left with no further recourse from the University, and vigilantly concerned for her own safety and the safety of other women on campus, Fernanda posted a video to her social media in January 2022 denouncing the University for allowing her assailant to walk free.

59.     On February 1, 2022, Fernanda received a formal correspondence from Loyola indicating she had violated the University's Community Standards, specifically for "Harassment and Bullying."

60.     The University set an immediate administrative hearing with Fernanda on February 3, 2022.

61.     On February 9, 2022, a mere six (6) days after Fernanda's administrative hearing, Fernanda received an official correspondence from Loyola indicating she would be placed on "University Probation:"

Dear Fernanda,

This letter will summarize the outcome of your recent administrative hearing, where we discussed the report of your alleged misconduct on January 21, 2022.

After reviewing all available information related to this incident and discussing it with you, I have made the following determinations regarding your responsibility for the following policy/policies of Loyola's Community Standards:

201(12) Harassment and Bullying (B or C) -- Responsible

In response to this behavior and in consideration of your conduct history (if applicable), you are assigned the following outcome(s):

**University Probation**
You are being placed on University Probation until May 13, 2022. University Probation is formal notice to you that your behavior is unacceptable in the Loyola community and continued misconduct while on probation could result in suspension or expulsion from the University. Students on University Probation also may not hold certain leadership positions, as determined by the standards of individual registered and sponsored student organizations, until after their probation period has ended.

62.    Loyola administrators informed Fernanda this "probationary period" would remain on her official University record and transcript for at least seven years—i.e., if Fernanda applies to graduate school, Fernanda's records from Loyola will indicate Fernanda was placed on probation by the University for "Harassment and Bullying."

63.    The University also indicated administrators would be contacting Fernanda's parents to inform them that Fernanda had been placed on probation for "Harassment and Bullying:"

**Parent/Guardian Notification**
Although not technically a sanction, we wish to inform you that in this case, a letter will be sent to your parent(s)/guardian(s) stating you were found responsible for violating the conduct policies of Loyola University Chicago. This is per the administrative procedures outlined in the Community Standards. No action is required on your part, although you are encouraged to discuss this with your parents before they receive the letter. This action is not subject to appeal.

64.    Fernanda appealed the University's decision to place her on any probationary period. In Fernanda's appeal, she included statements from the following individuals who voiced firsthand knowledge of Loyola's deliberate indifference to sexual assault and harassment and the similar experiences and injuries they had suffered:



Sending love to you as an LUC alumn. It pains me that they continued to let rapists walk free. I graduated 10 years ago and nothings changed
1-19   Reply



When I went to Loyola they gave a guy accused of rape a huge golf scholarship. I remember him being so creepy, and Loyola let him in! I'm sorry!

1-19   Reply



Loyola is such trash. I worked there for a year, the things I would hear. 🙄 I feel bad for all the girls. This definitely isn't the 1st time either.

1-20   Reply





my r*pist goes to loyola too im so sorry bae :(

1-19   Reply



LUC is notorious for sweeping s.a cases under the rug. I'm sorry they treated you like sh*t.

1-20   Reply



14



This happened to me but was a graduate assistant teaching a class and instead of expelling him, they gave him an award for teaching 3 months later🥲

1-19   Reply



Didnt another girl just have the same thing happen last year! LUC needs to be held accountable

1-19   Reply



I go to LUC too, and so many women have been SA'd on that campus and the school does nothing

1-20   Reply



luc student!! loyola does not prioritize student safety in the slightest.

1-20   Reply



This isn't the first time this happened at LUC - graduated a couple years ago and this same thing happened 😔 so sorry you're going through this

1-20  Reply



Girl I went to Loyola and the same thing happened to me they did nothing. I'm so so sorry this happened to you.

1-21  Reply



There are so many people that have been failed by the Title IX office at LUC. I'm so sorry you had to go through this

1-21  Reply



My first year there they allowed a golf student athlete keep his scholarship after it came out that he assaulted and underage girl in his home town1/2

1-21  Reply

2/2 worst part was he pled guilty I'm pretty sure and Loyola was like ya he can stay on scholarship

1-21  Reply



Honestly, the school has a history of this response. I graduated in 2013 & we had multiple instances of this. I'm so sorry you're going through this

1-22  Reply



that's so upsetting and not surprising, i reported someone WHO WORKED THERE trying to take a drunk-

1-24  Reply

oattbug

girl home- picture evidence and all and nothing was done. FCK LOYOLA

1-24  Reply



As a luc student I'm so tired of Loyola not doing anything about this. I'm so so sorry love

1-25  Reply



sending support girl❤️ I go to luc and I am so shocked at how admin here and at other colleges deal with any situation

1-19  Reply



Luc protected my abuser as well. You're not alone girlie. I'm sorry this is something you had to go through.

1-19  Reply



As a fellow luc student, I'm honestly sick of admin not listening to us. Like we protest and post and spread awareness and nothing happens

1-18   Reply



as a graduate from luc, loyola's osccr does absolutely nothing for their students. an absolute waste.

1-19   Reply



As an luc grad i am 0% surprised and I am so so sorry. It was just as bad when I was there. Sending lots of love.

1-18   Reply

Liked by creator



When I literally just had a class with the guy who sa-ed me @ luc

1-18   Reply



loyola is just horrendous when it comes to anything title ix related, I'm so so sorry girl ❤️

1-18   Reply

65.      At least two current Loyola students and survivors—one of Fernanda's roommates, and one of Fernanda's sorority sisters—have informed Fernanda that, after being there for Fernanda while she went through the Title IX process which resulted in a no finding against her assailant, and the University placing Fernanda on probation for "Harassment and Bullying" thereafter, they are too intimidated to come forward to report their sexual assaults out of fear the University will revictimize and retaliate against them too.

66.      Because of Fernanda's sexual assault and Loyola's flawed, humiliating Title IX investigation and decision to place Fernanda on probation for "Harassment and Bullying" thereafter, Fernanda has struggled with anxiety, depression, PTSD, and suicidal intimations and a resultant hospitalization.

67.      While Fernanda was forced to navigate Loyola's Title IX formal complaint proceedings with little support from the University, Fernanda also fell behind in her classes and failed one course; Fernanda is required to take a "make-up" class from May 2023 through July 2023, despite previously being on track prior to receive her undergraduate degree in May 2023.

68.      Fernanda, who planned to go to graduate school after graduating Loyola, has decided against doing so in fear of not being accepted due to the probationary period she was placed on for "Harassment and Bullying," which will be reflected in her transcript from the University.

**OTHER SALIENT FACTS**

69.     Fernanda is informed, believes, and on that basis alleges, Loyola has systemically mishandled student complaints of sexual violence and sexual harassment, contrary to federal and state mandates and its own internal policies and procedures, dating back to at least 2011.

70.     Loyola's student newspaper, *The Phoenix*, has reported:

- In 2016, a female student's sexual assault report was lost by the University, which Dean Love acknowledged and apologized for.

- Dean Love has admitted Loyola has an "internal goal" of responding to reports within one business day—despite the fact Illinois law requires universities to respond within 12 hours.

- Multiple protests have been held, on a near yearly basis, by students demanding Loyola do more to combat violent sex crimes from occurring at the University.

- The University allowed a professor to continue teaching classes after determining several students' reports of his sexual misconduct to be credible.

- After three female students reported they were raped by the same male student on campus in 2018, it took the University five months, despite informing them it would take approximately 60 days, to find the students' allegations to be credible. The University initially sanctioned him by requiring he complete community service and write a paper on the meaning of consent—a gravely disproportional sanction for violently raping three students on campus.

- Students have reported the University's Title IX investigators have made serious errors in witness statements and sent emails with sensitive information to perpetrators versus survivors.

- Loyola found a male student guilty of rape and thereafter expelled and banned him from campus, but still allowed him to participate in his graduation ceremony.

71.     Plaintiff is informed, believes, and on that basis alleges, Loyola has also grossly underreported the number of sexually violent incidents that occurred during the years prior to Plaintiff's enrollment at the University.

72.     In December 2017, University Security reported the Chicago Police Department had reported 873 violent crimes in Loyola's jurisdiction since 2013, but the University's Campus Safety had only reported 205.[7]

73.     Many of the violent crimes not reported by Campus Safety occurred within less than a five-minute walk from the University's campus, including 89 aggravated assaults and batteries, 94 robberies, 44 crimes with guns, and 29 sex crimes.[8]

74.     According to Loyola's Preventing Violence in Higher Education Annual Report, in 2016:

- 48 incidents of "on campus" sexual violence, domestic violence, dating violence, and stalking were reported to Loyola's Title IX Office;

- 66 incidents of "on campus" sexual violence, domestic violence, dating violence, and stalking were reported to a confidential and anonymous resource; and

- 68 incidents of "off campus" sexual violence, domestic violence, dating violence, and stalking were reported.[9]

75.     Thus, in total, there were 182 incidents of sexual violence, domestic violence, dating violence, and stalking reported by Loyola students in 2016.[10]

76.     According to Loyola's Preventing Violence in Higher Education Annual Report, in 2017:

- 36 incidents of "on campus" sexual violence, domestic violence, dating violence, and stalking were reported to Loyola's Title IX Office; and

---

[7] "Loyola Campus Safety Reports a Fraction of Crimes Compared to CPD," *The Phoenix* (updated January 31, 2018), (https://loyolaphoenix.com/2017/11/campus-safety-chronically-reports-crime/.

[8] *Id.*

[9] *See* Loyola's 2016 Preventing Violence in Higher Education Annual Report (last accessed September 12, 2022): https://www.luc.edu/media/lucedu/equity/pdfs/Loyola%20Univeristy%20Chicago_Annual%20Report%202016.pdf.

[10] *Id.*

- 93 incidents of "on campus" sexual violence, domestic violence, dating violence, and stalking were reported to a confidential and anonymous resource.[11]

77.     Loyola did not publish how many incidents occurred "off campus" or at "non-campus buildings or properties" in 2017, or any year thereafter.[12]

78.     Despite 129 incidents of "on campus" sexual violence, domestic violence, dating violence, and stalking reported to have occurred in 2017—and an unknown number of off-campus incidents—not a single student was reprimanded by the University in 2017, as shown below:

Loyola University Chicago                                                                      Part B (II) (B)

**PART B (II)(B) Complaint Resolution Procedure Outcomes**

*It should be noted that several cases reported to have occurred outside of "Clery Geography" (i.e. at off-campus parties, apartments, etc.) were addressed through the complaint resolution process. However, given the reporting guidelines which advise to narrowly report only those incidents which occurred within "Clery Geography," these incidents and their related outcomes are not reflected in the data below.

|  | Found "not responsible" for violation of comprehensive policy | Dismissed/expelled | Suspended | Otherwise disciplined |
|---|---|---|---|---|
| **Sexual violence** | 0* | 0 | 0 | 0 |
| **Domestic violence** | 0 | 0 | 0 | 0 |
| **Dating violence** | 0 | 0 | 0 | 0 |
| **Stalking** | 0 | 0 | 0 | 0 |

---

[11] *See* Loyola's 2017 Preventing Violence in Higher Education Annual Report (last accessed September 12, 2022): https://www.luc.edu/media/lucedu/equity/pdfs/Loyola%20University%20Chicago%202018%20ILPSVHE%20Annual%20Report%20(Submitted%20November%201,%202018).pdf.

[12] *Id.*

79.    The Department of Education Office of Postsecondary Education publishes the most recent three years of a university's self-reported sexual misconduct crime statistics.[13] According, to its website, from 2018 to 2020 Loyola reported:

- In 2018, there were 11 incidents of rape and 9 incidents of fondling reported "on campus;" 0 incidents of rape and 0 incidents of fondling were reported on "non-campus" properties; and 0 incidents of rape and 0 incidents of fondling were reported on public properties.

- In 2019, there were 7 incidents of rape and 4 incidents of fondling reported "on campus;" 0 incidents of rape and 0 incidents of fondling were reported on "non-campus" properties; and 2 incidents of rape and 0 incidents of fondling were reported on public properties.

- In 2020, there were 5 incidents of rape and 3 incidents of fondling reported "on campus;" 1 incident of rape and 0 incidents of fondling were reported on "non-campus" properties; and 0 incidents of rape and 1 incident of fondling was reported on public properties.

80.    Upon information and belief, the above data grossly underreports the number of violent sexual criminal offenses reported during from 2018 to 2020 within Loyola's Clery Geography, in violation of federal and state regulations in addition to the University's internal policies and procedures.

**FIRST CAUSE OF ACTION**
**VIOLATION OF TITLE IX, 20 U.S.C. § 1681**
**DISCRIMINATION ON THE BASIS OF GENDER, PRE- AND POST-ASSAULT**
**DELIBERATE INDIFFERENCE, AND ERRONEOUS OUTCOME**

81.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

82.    The acts, and failures to act, perpetrated against Plaintiff amounted to unlawful sexual harassment and discrimination on the basis of gender.

83.    Loyola had actual knowledge its policies and procedures, as written and implemented, were enabling acts of sexual violence against its students, including Plaintiff.

---

[13] *See* U.S. Department of Education Office of Postsecondary Education (last accessed September 12, 2022), https://ope.ed.gov/campussafety/#/institution/search.

84.     The University maintained a *de facto* policy, detailed throughout this Complaint, to suppress reports of sexual violence and sexual harassment, and to support accused campus predators, resulting in a culture of deliberate indifference toward sexual misconduct at Loyola.[14]

85.     Thus, Loyola's actions evidence an official decision by Dean Love, Loyola's Title IX coordinator, and other high-ranking University officials, not to remedy Loyola's systemic mishandling and underreporting of sexual violence.

86.     In violation of federal and state regulations as well as in violation of Loyola's own policies and procedures, the University failed to provide Plaintiff with a fair, prompt, and equitable proceedings in response to complaints of sexual misconduct.

87.     Plaintiff was, therefore, subjected to erroneous outcomes: Fernanda's assailant was wrongly found not guilty, despite overwhelming evidence surpassing the University's preponderance standard, and Fernanda was retaliated against and reprimanded by the University thereafter—thereby intimidating Fernanda and other survivors from coming forward to report acts of sexual assault and harassment.

88.     Following each of Plaintiff's sexual assaults described above, Dean Love and other high-ranking University administrators became aware of the facts underlying Plaintiff's injuries.

89.     In spite of that knowledge, Dean Love and other University officials, with authority to take corrective action on Plaintiff's behalf, had actual notice of said discrimination and failed to adequately

---

[14] The Tenth Circuit has concluded that Title IX liability exists "when the violation is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient." *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007).

*See also Posso v. Niagara Univ.*, No. 19-CV-1293-LJV-MJR, 2020 WL 8771334, at *6 (W.D.N.Y. Nov. 2, 2020), report and recommendation adopted, 518 F. Supp. 3d 688 (W.D.N.Y. 2021) (the Court finds *Simpson* and *Karasek* [cited *supra*, in Footnote 3] persuasive for the premise that a university can certainly be liable under Title IX for a policy of deliberate indifference to a heightened risk of sexual harassment known to exist within a particular group or context, and possibly beyond that).

respond. Those failures amounted to deliberate indifference toward the unlawful conduct that was occurring and staggering number of incidents of sexual assault and sexual harassment occurring on Loyola's campus and within non-campus properties and buildings—especially fraternity houses.

90.     Loyola's well-documented pattern of discrimination and sexual misconduct against female victims and in favor of male assailants, created an atmosphere on campus that was permeated with discriminatory intimidation and retaliation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of the education and create a sexually hostile environment for Plaintiff.

91.     The University's response to Fernanda was so hostile as to compound her injuries, including dissuading Fernanda from continuing with her studies and applying to graduate school, constituting retaliation under Title IX.

92.     Additionally, and/or in the alternative, Loyola failed to enact and/or disseminate and/or implement proper or adequate policies to discover, prohibit or remedy the kind of discrimination that Plaintiff suffered. This failure included, without limitation, nonexistent and inadequate enforcement policies and procedures for the recognition, reporting, investigation, and correction of unlawful discrimination. Loyola acted with deliberate indifference in deviating significantly from the standard of care it owed Plaintiff.

93.     As a result of Loyola's discrimination, deliberate indifference, and erroneous outcomes per Title IX, Plaintiff is entitled to recover her damages and reasonable attorneys' fees and costs of litigation from the University.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE ILLINOIS PREVENTING SEXUAL VIOLENCE IN HIGHER EDUCATION ACT

94.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

95.     The University violated Plaintiff's rights pursuant to the Illinois Preventing Sexual Violence in Higher Education Act.

96.     Based on information and belief, Loyola's Title IX coordinator, Dean Love, and other high-ranking officials, consciously and intentionally underreported the number of sexually violent incidents that occurred "on campus," in "non-campus buildings or properties," and on "public property" within a reasonably contiguous area of the school, in violation of the Illinois Preventing Sexual Violence in Higher Education's reporting requirements.

97.     Further, Loyola violated the Act by:

- Failing to notify Plaintiffs about the protections the University could provide to ensure their safety, such as obtaining an order of protection, changing class schedules or campus housing, reporting to law enforcement, and the availability of medical and counseling services;

- not responding to Madeline's electronically submitted report within 12 hours; Loyola's Title IX Coordinator, Dean Love, has stated although the University is legally obligated to do so, Loyola has its own internal policy of attempting to respond to survivors' electronically submitted reports within one business day; and

- not conducting a prompt, fair, and equitable investigation into Plaintiffs' grievances.

98.     While there is not an explicit private right of action in 110 ILCS 155/20, there is an implied right of action that can be established under Illinois common law. *See Metzger v. DaRosa*, 209 Ill. 2d 30, 36 (2004).

99.     More specifically, "implication of a private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Id.*

100.    Plaintiff, a female student and survivor of sexual assault at a place of higher education, is a member of the class for whose benefit 110 ILCS 155/20 was enacted, and her injuries were injuries of which 110 ILCS 155/20 was designed to prevent.

101.    A private right of action is consistent with the purpose of the statute, which is to prevent sexual violence in institutions of higher education in the state of Illinois—such as Loyola.

102.    Implying a private right of action is necessary to provide an adequate remedy for violations of 110 ILCS 155/20.

103.    As a result of the University's failures and inaction, Plaintiff has suffered physical damages and mental anguish, lost earning capacity, lost tuition, past and future medical expenses, among other harms, as a direct and proximate result of Loyola's violations of the Preventing Sexual Violence in Higher Education Act.

### THIRD CAUSE OF ACTION
### NEGLIGENCE

104.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

105.    At all relevant times, Loyola owed Plaintiff a duty of reasonable care—as set forth by federal and state regulations in addition to the University's internal policies and procedures—to ensure their safety and freedom from sexual assault and sexual harassment by, among other things, conducting an investigation into their claims of sexual misconduct which complied with Title IX, the Clery Act, and the Illinois Preventing Sexual Violence in Higher Education.

106.    Loyola was aware that a staggering number of sexual assaults against its students, including Plaintiff, were occurring at the University, creating a serious risk of harm of sexual misconduct to all students, including Plaintiff.

107.    After Plaintiff was subjected to sexual misconduct, the University took no reasonable protective measures to protect Plaintiff, nor took action to prevent the recurrence of future incidents of sexual misconduct or remedy the effects of sexual misconduct on Plaintiff.

108.    Loyola's failure to follow federal and state regulations in additions to its own policies and procedures in reviewing, investigating, reporting, and resolving complaints of sexual assault and sexual harassment constitutes a breach of the duty of care it owed Plaintiff.

109.    This breach caused harm to Plaintiff and benefitted the University, which sought to protect its reputation from public knowledge of the rampant sexual misconduct occurring at Loyola.

110.    The above acts and omissions were a proximate cause of Plaintiff's injuries and the resulting damages Plaintiffs seek in this suit.

111.    That by reason of the foregoing, Plaintiff is entitled to recover all of her damages from Loyola.

**FOURTH CAUSE OF ACTION**
**NEGLIGENT TRAINING/SUPERVISION/RETENTION**

112.    Plaintiff hereby incorporate by reference the allegations set forth in the above paragraphs as if fully set forth herein.

113.    Plaintiff alleges negligent failure to warn, train, or educate by Loyola in its response to reports of sexual misconduct.

114.    Plaintiff alleges negligent supervision by Loyola in its response to reports of sexual misconduct. Loyola had a duty to properly supervise, train, and monitor its employees and students and to ensure those employees' and students' compliance with Title IX and all applicable federal and state regulations in addition to internal policies and procedures, but they failed to do so and therefore breached the duties of care owed to Plaintiff as alleged herein.

115.    Loyola's failure to timely report, investigate, and respond to the sexual assaults perpetrated against Plaintiffs is a breach of the University's duty to train and supervise its employees.

116.    Loyola also breached its duties to Fernanda, and other similarly situated Loyola students, by retaining Dean Love as the University's Title IX coordinator, after he admitted to not following federal and state regulations by losing and failing to promptly respond to student reports of sexual misconduct.

117.    These breaches caused harm to Plaintiff and benefitted the University, which sought to protect its reputation from public knowledge of the rampant sexual misconduct occurring at Loyola.

118.    The above acts and omissions were a proximate cause of Plaintiff's injuries and the resulting damages Plaintiff seek in this suit.

119.    That by reason of the foregoing, Plaintiff is entitled to recover all of her damages from Loyola.

## FIFTH CAUSE OF ACTION
## GROSS NEGLIGENCE

120.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

121.    The University's acts and omissions, as previously described, were committed with reckless disregard for, and with willful, wanton, and conscious indifference to, the rights, safety, and welfare of Loyola's students, including Plaintiff.

122.    The nature of Loyola's aforesaid wrongful acts and omissions were of such a nature as to constitute gross negligence and malice.

123.    Loyola's Title IX coordinator, Dean Love, and other high-ranking officials breached their duties to Plaintiff by undertaking a continuous course of action in the form of conscious decisions, with subjective knowledge and awareness of the risks and hazards presented by each decision as discussed above and incorporated herein, to expose Plaintiff and other Loyola students to sexual misconduct—in violation of federal and state regulations and the University's own policies and procedures—without exercising slight care or diligence.

124.    These breaches caused harm to Plaintiff and benefitted the University, which sought to protect its reputation from public knowledge of the rampant sexual misconduct occurring at Loyola.

125.    The above acts and omissions were a proximate cause of Plaintiff's injuries and the resulting damages Plaintiffs seek in this suit.

126.    That by reason of the foregoing, Plaintiff is entitled to recover all of her damages from Loyola.

## SIXTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

127.    Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

128.    In addition to the common law duty of ordinary care discussed above, and incorporated herein, Loyola had a duty that arose because of, *inter alia*, a special relationship between the University and its students.

129.    Loyola agreed to educate, care for, and keep safe University students in exchange for tuition, for which Loyola accepted in order to find and promote Plaintiff's and other Loyola students' University courses and other educational experiences and initiatives.

130.    Loyola's Title IX coordinator, Dean Love, and other high-ranking officers breached their duty of care by acting with reckless disregard for the safety and welfare of Plaintiff and other students by failing to properly investigate, remedy, and take a reasonable course of action to prevent sexual misconduct.

131.    Loyola placed its own reputational interests ahead of the safety of its students, including Plaintiff.

132.    Dean Love and other high-ranking Loyola administrators breached their fiduciary duties by, among others, hiding and keeping secret the fact that there were known sexual predators on the University's campus to whom Plaintiff and other students would be subjected to, by failing to disclose reports and crime statistics of sexual misconducted, as required by federal and state regulations; and by failing to disclose the University's culture of deliberate indifference to sexual misconduct, knowledge of endemic sexual assault and sexual harassment, and its policy of fraudulently concealing past incidents of sexual abuse—thereby putting the interest of Loyola ahead of students and victims like Plaintiff by continuing to this day to hide the full extent of the staggering number of sexual assaults that occur on the University's campus and by Loyola students every year.

133.    These breaches caused harm to Plaintiff and benefitted the University, which sought to protect its reputation from public knowledge of the rampant sexual misconduct occurring at Loyola.

134.     The above acts and omissions were a proximate cause of Plaintiff's injuries and the resulting damages Plaintiff seeks in this suit.

135.     That by reason of the foregoing, Plaintiff is entitled to recover all of her damages from Loyola.

## SEVENTH CAUSE OF ACTION
## PREMISES LIABILITY

136.     Plaintiff incorporates all consistent paragraphs of this Complaint as if fully set forth.

137.     At all relevant times, Loyola owned, operated, and exercised control over the dorm buildings and premises upon which Plaintiffs' sexual assaults occurred.

138.     At all relevant times, Plaintiff was an invitee on the University owned and/or controlled premises where she was assaulted.

139.     Loyola breached its duties to Plaintiff by providing inadequate security and supervision over the premises, despite the known existence of unreasonable risk of harm from dangerous sexual predators on these premises.

140.     The risk of harm was foreseeable, and the University knew or had reason to know that sexual assaults would occur given previous sexual misconduct, proximity of other incidents of sexual misconduct, the recency of other sexual misconduct, frequency of sexual misconduct, the similarity of other sexual misconduct, and actual notice and knowledge of sexual misconduct by Dean Love and other Loyola administrators.

141.     These breaches caused harm to Plaintiff and benefitted the University, which sought to protect its reputation from public knowledge of the rampant sexual misconduct occurring at Loyola.

142.     The above acts and omissions were a proximate cause of Plaintiff's injuries and the resulting damages Plaintiff seeks in this suit.

143.     That by reason of the foregoing, Plaintiff is entitled to recover all of her damages from Loyola.

## EIGHTH CAUSE OF ACTION
## FRAUD

144.    Plaintiff incorporates all paragraphs of this Complaint as if set forth herein.

145.    Loyola, by and though the University's officers and authorized managing agents, committed fraud upon Plaintiff with respect to their false representations regarding the safety of their facilities, associated programs and students to the pecuniary damage of Plaintiff.

146.    In order to induce Plaintiff to enroll at the University and pay tuition, and to induce Plaintiff to continue her enrollment, attendance at and payment of tuition to the University, Loyola issued statements and made omissions that communicated to Plaintiff the University was safe and that students only experienced a minimal amount of sexual violence.

147.    Based on information and belief, Loyola consciously and intentionally underreported the number of sexually violent incidents that occurred "on campus," in "non-campus buildings or properties," and on "public property" within a reasonably contiguous area of the school, in violation of the Clery Act's and the Illinois Preventing Sexual Violence in Higher Education's reporting requirements.

148.    Loyola stopped publishing reports of sexual violence that occurred on "non-campus" (i.e., "off campus") buildings and properties, including fraternity and sorority houses, after 2016.

149.    Thus, the statistics reported in Loyola's annual reports were false when made and the University knew them to be false.

150.    The above fraudulent acts and omissions by the University were a proximate cause of Plaintiff's injuries and the resulting damages Plaintiff seeks in this suit.

151.    That by reason of the foregoing, Plaintiff is entitled to recover all of her damages from Loyola.

**PRAYER FOR RELIEF AND JURY DEMAND**

152.    Wherefore, based on the foregoing causes of action, Plaintiff demands judgment against Loyola in an amount to be determined in a trial by jury; for a sum that will fully and fairly compensate Plaintiff for her injuries and conscious pain and suffering, that Plaintiff recovers actual damages; that

Plaintiff is entitled to recover compensatory damages; that Plaintiff recover punitive damages; together with litigation costs, expenses and reasonable and necessary attorneys' fees, pre-judgment and post-judgment interest pursuant to 28 U.S.C. § 1961 and any other applicable law or statute; and any and all other relief to which Plaintiff may be justly entitled.

153.    In addition to monetary damages, as a current Loyola student, Fernanda seeks injunctive relief from Loyola, as damages alone are not an adequate remedy for the University's ongoing and continuous violations of federal and state regulations in addition to Loyola's own policies and procedures. Loyola's deliberate indifference to sexual misconduct continues to endanger Loyola students, including Fernanda, at present and indefinitely into the future; Dean Love and Loyola's other high-ranking officials know, or reasonably should know, the ongoing and endemic student-on-student sexual assault and sexual harassment has created a hostile environment that pervades to date and will continue unless this court intervenes. Fernanda, therefore, seeks a permanent injunction requiring Loyola to ensure the University accurately reports incidents of sexual violence; takes substantial steps to properly and timely investigate reports of discrimination at Loyola; provide appropriate interim measures and reasonable accommodations to complainants, impose appropriate discipline and remedial measures in situations where a violation of Title IX, the Clery Act, the Illinois Preventing Sexual Violence in Higher Education Act, and the University's Comprehensive Policy is found to have occurred; cease all retaliatory action against students who report incidents of sexual misconduct; and impose appropriate discipline and remedial measures, as necessary.

154.    Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

*/s/ Elizabeth A. Fegan*

Elizabeth A. Fegan
**Fegan Scott LLC**
150 S. Wacker Dr., 24th Floor

Chicago, Illinois 60606
Tel: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

Ashley M. Pileika
Darren Wolf*
**Law Office of Darren Wolf, P.C.**
1701 N. Market St., Suite 210
Dallas, Texas 75202
Tel: 214-346-5355
Fax: 214-346-5909
ashley@darrenwolf.com
darren@darrenwolf.com

*Pro hac vice application forthcoming

*Attorneys for Plaintiffs*